DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jesse C. Lyons, appeals from his convictions in the Medina County Court of Common Pleas for felonious assault and kidnapping. We affirm.
 I. {¶ 2} On June 7, 2002, the Medina County Grand Jury indicted Mr. Lyons on two separate counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1); and (2) kidnapping, in violation of R.C. 2905.01(A)(2) and/or (B)(2). A jury trial followed. The jury found Mr. Lyons guilty on both counts, and the trial court sentenced him. Mr. Lyons timely appeals and raises four assignments of error for review. The assignments of error have been rearranged for ease of review.
 II. A. Third Assignment of Error
"[MR. LYONS'] CONVICTION[S ARE] CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE AND THE TRIAL COURT ERRED WHEN IT DENIED [MR. LYONS'] MOTION FOR ACQUITTAL PURSUANT TO [CRIM.R.] 29."
 {¶ 3} In his third assignment of error, Mr. Lyons challenges the adequacy of the evidence produced at trial. Specifically, Mr. Lyons avers that his convictions for felonious assault and kidnapping were based on insufficient evidence and are against the manifest weight of the evidence. Mr. Lyons' assignment of error lacks merit.
 {¶ 4} In order for a defendant to preserve the right to appeal the sufficiency of the evidence upon which his conviction is based, he must timely file a Crim.R. 29 motion for acquittal with the trial court. Statev. Liggins (Aug. 18, 1999), 9th Dist. No. 19362, citing State v. Pantic
(May 26, 1999), 9th Dist. No. 18963. See, also, State v. Roe (1989),41 Ohio St.3d 18, 25. The defendant must also renew his motion for acquittal at the close of all evidence in order to preserve the issue for appeal. State v. Childress (June 29, 1988), 9th Dist. No. 4320, citingState v. Deboe (1977), 62 Ohio App.2d 192, 194. Absent such a renewal, the defendant waives any error "in the overruling of the motion for judgment of acquittal" unless the case is tried to the bench. Dayton v.Rogers (1979), 60 Ohio St.2d 162, 163, overruled on other grounds,76 Ohio St.3d 261 (1996).
 {¶ 5} In the instant case, Mr. Lyons failed to renew his Crim.R. 29 motion for acquittal after presenting his defense. As such, Mr. Lyons has waived any error regarding the sufficiency of the evidence presented at trial and, consequently, he may not challenge the sufficiency of the evidence on appeal.
 {¶ 6} "[A] manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390
(Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} Mr. Lyons was found guilty of felonious assault, in violation of R.C. 2903.11(A)(1), which states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" The jury also found him guilty of kidnapping, in violation of R.C. 2905.01(A)(2) and/or (B)(2). R.C. 2905.01(A)(2) provides, in pertinent part, "[n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o facilitate the commission of any felony[.]" R.C.2905.01(B)(2) reads, in relevant part, "[n]o person, by force, threat, or deception * * * shall knowingly * * * under circumstances that create a substantial risk of serious physical harm to the victim * * * [r]estrain another of his liberty[.]" "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 9} At trial, Detective Robert Mills testified that on February 22, 2002 he went to the Rainbow Bar in response to a call he received. He further testified that when he arrived at the Rainbow Bar, he observed Boyd Wellman ("Wellman"), the victim, seated in the driver's seat of a truck. Detective Mills explained that Wellman was either unconscious or asleep. He then stated that he noticed a pool of "fresh" blood in front of the truck, and remarked that in the pool of blood was glass from a beer bottle and the neck of a beer bottle. Detective Mills noted that strands of gray hair were attached to some pieces of glass, and the strands of gray hair appeared similar to Wellman's hair. He acknowledged that he did not know how the blood got on the sidewalk or how the broken beer bottle landed in front of Wellman's truck.
 {¶ 10} Shirley Wellman ("Mrs. Wellman"), Wellman's wife, testified that Wellman worked at the Rainbow Lounge part-time. She then testified that she called the Rainbow Lounge when Wellman did not return home from work on February 22, 2002. Mrs. Wellman asserted that after she learned Wellman did not show up for work, she went to the Rainbow Lounge. She stated that she discovered Wellman in his truck. Mrs. Wellman testified that Wellman could not remember how he sustained his injuries. She finally stated that Wellman had two beers that evening, and that his mood generally does change when he has been drinking; in particular, he becomes more aggressive and angry.
 {¶ 11} Officer Frank Kaiser testified that he proceeded to the Rainbow Lounge in response to a call regarding a possible "slip and fall[.]" He stated that when he arrived at the Rainbow Lounge, he noticed Wellman was in a semi-conscious state, was bleeding, and smelled like beer. Officer Kaiser further stated that he noticed blood on the sidewalk and a broken beer bottle in front of the truck. He asserted that a piece of glass from the beer bottle had hair on it. Officer Kaiser indicated that he asked Wellman what had happened, and that Wellman said he had slipped. Despite Wellman's statement, Officer Kaiser explained that he investigated the case as an assault.
 {¶ 12} Tara Wells ("Wells") testified that she worked as a bartender at the Sports Pub. She further testified that she saw Mr. Lyons, Doug Robinson ("Robinson"), Paul Konich ("Konich"), and R.J. Thomas ("Thomas") at the Sports Pub on February 22, 2002. Wells stated that after she learned a fight had started, she exited the Sports Pub and saw Mr. Lyons, Robinson, and Thomas "kicking, stomping, and beating" someone in the Rainbow Lounge parking lot; she further stated that she did not see any of the three men hit Wellman with a beer bottle. Wells explained that the punches and kicks appeared to be "pretty bad," and, for that reason, she screamed, "the cops are coming[.]" She then testified that the men returned to the Sports Pub and she inquired as to the cause of the fight, and one of the men said, "some dude at the Rainbow was running his mouth." Wells admitted that she had smoked a "joint" before observing the fight, but maintained that the "joint" did not impair her vision. Finally, Wells admitted that when she initially spoke with the police she did not tell them the entire story.
 {¶ 13} Detective Daniel Boyd testified regarding the statements made by Mr. Lyons. Particularly, Detective Boyd stated that Mr. Lyons admitted he had been drinking on February 22, 2002; that he was at the Sports Pub with Robinson, Konich, and Thomas; and that he argued with Wellman in the Rainbow Lounge parking lot.
 {¶ 14} Detective Boyd also testified how the argument began, as relayed to him by Mr. Lyons. He testified that when Mr. Lyons left the Sports Pub, he heard Wellman in the Rainbow Lounge "running his mouth." Detective Boyd then testified that Mr. Lyons approached Wellman to "see what [his] problem was[,]" and that they began arguing. He stated that Mr. Lyons told him that Wellman asked "if he wanted his ass kicked[,]" and that Wellman kicked Mr. Lyons in the groin area. Detective Boyd asserted that Mr. Lyons admitted he hit Wellman on the head, and that another individual hit Wellman on the head with a beer bottle. Detective Boyd relayed that Mr. Lyons asserted that he then left the area and proceeded to Tonya Amodio's ("Amodio") house, but Mr. Lyons indicated that Robinson, Konich, and Thomas "went to town on [Wellman]."
 {¶ 15} Dr. Ghassan Khayyat and Dr. Michael Hill testified regarding Wellman's injuries. Specifically, Dr. Khayyat described his injuries as a skull fracture; bruises on his brain, scalp, and face; and abrasions on his head and face. Dr. Khayyat asserted that he did not know what caused Wellman's injuries. Dr. Hill testified that Wellman sustained a skull fracture, brain injuries, and numerous bruises. He indicated that the bruises could be consistent with an assault, and that some bruises were more suspicious than others. Finally, Dr. Hill remarked that Wellman had a problem with alcohol.
 {¶ 16} Robinson testified that he, Mr. Lyons, Konich, and Thomas went to the Sports Pub on February 22, 2002. He stated that when he and Mr. Lyons left the Sports Pub, Wellman yelled at them from the Rainbow Lounge. Robinson explained that he and Mr. Lyons ran to the Rainbow Lounge, and began arguing with Wellman. Robinson then described what then transpired. Particularly, he testified that (1) Wellman kicked Mr. Lyons in the groin; (2) Mr. Lyons retaliated and punched Wellman a couple of times on the head; and (3) Thomas hit Wellman on the head with a beer bottle. Robinson noted that Wellman attempted to protect himself during the incident by crouching and "scrambling around[.]" He further noted that neither he nor Mr. Lyons stepped away from Wellman to allow him to leave. Robinson maintained that Mr. Lyons did not "beat" Wellman; rather, he merely punched Wellman, and "[i]t * * * got out of control[.]" Robinson acknowledged that he did not remember everything that occurred that evening due to his intoxication.
 {¶ 17} After the State rested, Mr. Lyons presented his case-in-chief. Sarah Bower ("Bower") testified that she went to the Sports Bar on February 22, 2002. She stated that after Mr. Lyons and Robinson left the bar, she went outside and saw Mr. Lyons and Robinson involved in a fight. Bower further stated that she saw Mr. Lyons throwing punches. Bower asserted that she returned to the Sports Bar and told Konich, Thomas, and Wells that there was a fight. She testified that when she exited the Sports Bar the second time, she saw Mr. Lyons walking to his car. Bower admitted that she might not be remembering the events correctly. She further admitted that she did not want to believe that Mr. Lyons was involved in the assault.
 {¶ 18} Mr. Lyons testified that he went to the Sports Pub on February 22, 2002. He stated that at the bar he saw Robinson, Konich, Thomas, Wells, and Bower, and that everyone was "pretty much drunk." Mr. Lyons explained that as he was walking from the Sports Pub to his car, he heard Wellman say, "boy, you want your ass kicked," and that Wellman began to approach him. He further explained that he and Wellman argued, and that Wellman attacked him by kicking him "between the legs." Mr. Lyons conceded that he hit Wellman twice on the face. He asserted that he was merely attempting "to put [Wellman] in his place[,] * * * not to fight him, to set things straight[.]" He then testified that he left and went to Amodio's house.
 {¶ 19} After careful review of the record, we are unable to conclude that the trier of fact lost its way and created a manifest miscarriage of justice when convicting Mr. Lyons of felonious assault and kidnapping. Consequently, Mr. Lyons' convictions were not against themanifest weight of the evidence. Accordingly, Mr. Lyons' third assignment of error is overruled.
 B. First Assignment of Error
"THE TRIAL COURT ERRED WHEN IT GAVE AN ERRONEOUS JURY INSTRUCTION ON SELF DEFENSE."
 {¶ 20} In his first assignment of error, Mr. Lyons avers that the trial court gave an erroneous jury instruction regarding self-defense. Specifically, Mr. Lyons avers that the trial court gave a jury instruction that addresses situations when a defendant responds to an attack with deadly force; Mr. Lyons claims that the appropriate instruction should have addressed situations when a defendant responds to an attack with "less than deadly force." We disagree.
 {¶ 21} An appellate court reviews a trial court's instructions to the jury under an abuse of discretion standard. See State v. Wolons
(1989), 44 Ohio St.3d 64, 68. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio StateMed. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id. Additionally, a jury charge must be considered as a whole, and a reviewing court must determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights. Ohio Farmers Ins. Co. v. Cochran
(1922), 104 Ohio St. 427, paragraph six of the syllabus. See, also,Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93, citing Becker v.Lake Cty. Mem. Hosp. W. (1990), 53 Ohio St.3d 202, 208.
 {¶ 22} At the outset, we note that Mr. Lyons failed to enter an objection during the trial court's recitation of the jury instructions. Crim.R. 30(A) provides "[o]n appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict[.]" Accordingly, Mr. Lyons has waived this challenge on appeal.
 {¶ 23} Although Mr. Lyons failed to preserve his challenge through a timely objection during the trial, his inaction at trial does not waive the plain error doctrine of Crim.R. 52(B). State v. Coley,93 Ohio St.3d 253, 266, 2001-Ohio-1340. See State v. Lundgren (1995),73 Ohio St.3d 474, 493; State v. McKee, 91 Ohio St.3d 292, 294,2001-Ohio-41 (writing that "[e]rrors that arise during a trial that are not brought to the attention of the court are ordinarily waived and may not be raised on appeal unless there is plain error, i.e., but for the error, the outcome of the trial clearly would have been otherwise"). Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Furthermore, "[n]otice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 24} In the case sub judice, as discussed with regard to Mr. Lyons' third assignment of error, there is evidence to support Mr. Lyons' convictions. Furthermore, we cannot say that, but for the alleged error concerning the jury instruction, "the outcome of the trial clearly would have been otherwise." McKee, 91 Ohio St.3d at 294. Accordingly, Mr. Lyons' first assignment of error is overruled.
 C. Second Assignment of Error
"THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE * * * TO PRESENT IMPERMISSIBLE OTHER ACTS EVIDENCE IN VIOLATION OF [EVID.R.] 404."
 {¶ 25} In his second assignment of error, Mr. Lyons argues that the trial court erroneously permitted the State to introduce evidence regarding "other acts," and this introduction violated Evid.R. 404. Mr. Lyons' argument is meritless.
 {¶ 26} A trial court has broad discretion to admit or exclude evidence. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Therefore, absent an abuse of discretion, an appellate court will not disturb a decision of a trial court. Id. at 182.
 {¶ 27} In this case, the trial court permitted the State to question Mr. Lyons regarding "other fights." The trial court found these questions permissible under Evid.R. 404(a)(1). Evid.R. 404(a)(1) states, in relevant part,
"(a) Character evidence generally. Evidence of a person's character or a trait of character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:
"(1) Character of accused. Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same[.]"
 {¶ 28} However, pursuant to Evid.R. 404(a)(1), the trial court could only permit the State to introduce evidence regarding Mr. Lyons' character for rebuttal purposes. Upon a review of the transcript, we find that the State was not introducing such evidence for purposes of rebuttal, as Mr. Lyons did not previously offer any evidence concerning his character. Assuming the admission of this testimony was erroneous, we nevertheless conclude such error was harmless. Crim.R. 52(A) defines harmless error as "[a]ny error, defect, irregularity, or variance which does not affect substantial rights[,]" and provides that harmless error "shall be disregarded." Accordingly, "[w]here constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." State v. Williams (1983),6 Ohio St.3d 281, paragraph six of the syllabus. The defendant bears the burden to demonstrate that the alleged error affected his substantial rights. State v. Biehl (Apr. 14, 1999), 9th Dist. No. 19054.
 {¶ 29} Our review of the record reveals that the State presented a myriad of evidence against Mr. Lyons over the course of his trial. As discussed above in this Court's analysis of Mr. Lyons' third assignment of error, even excluding the alleged evidence regarding Mr. Lyons' "other fights," the evidence would support Mr. Lyons' convictions. Therefore, any error that occurred in the admission of this testimony was harmlesserror. Accordingly, Mr. Lyons' second assignment of error is overruled.
 D. Fourth Assignment of Error
"THE TRIAL COURT ERRED WHEN IT SENTENCED [MR. LYONS] TO A MAXIMUM TERM OF IMPRISONMENT FOR FELONIOUS ASSAULT."
 {¶ 30} In his fourth assignment of error, Mr. Lyons contends that the trial court erroneously imposed the maximum sentence on the felonious assault charge. Mr. Lyons' contention rests on his notion that he did not commit the "worst form of the offense." Mr. Lyons' contention lacks merit.
 {¶ 31} An appellate court may modify a sentence or remand the matter for resentencing if it finds that the trial court clearly and convincingly acted contrary to the law. R.C. 2953.08(G)(2)(b). Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." State v. Eppinger (2001), 91 Ohio St.3d 158, 164, quotingCross v. Ledford (1954), 161 Ohio St. 469, 477. Furthermore, as the trial court has the best opportunity to examine the demeanor of the defendant and evaluate the impact of the crime on the victim and society, it is in the best position to make the fact-intensive evaluations required by the sentencing statutes. State v. Martin (1999), 136 Ohio App.3d 355, 361.
 {¶ 32} The general purpose of the sentence imposed is "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11(A). Therefore, when sentencing the defendant, the trial court must consider factors relating to the "seriousness of the conduct" and the "likelihood of * * * recidivism," which are contained in R.C. 2929.12. R.C. 2929.12(A). See, also, State v. Gibson, 3rd Dist. No. 2-01-15, 2001-Ohio-2297. When addressing these factors, the trial court need not use specific language or make specific findings on the record in order to evince the required consideration of the applicable factors.State v. Arnett, 88 Ohio St.3d 208, 215, 2000-Ohio-302; State v.Neptune, 9th Dist. No. 3171-M, 2001-Ohio-1768. Rather, the trial court need only state that it considered the applicable factors of R.C. 2929.12
in arriving at its decision. See Neptune, supra. See, also, State v.Marks (June 13, 2001), 7th Dist. No. 823, 2001-Ohio-3300.
 {¶ 33} In regard to the imposition of maximum sentences, the trial court may impose maximum prison terms upon offenders falling into one of the following four categories: (1) those offenders committing the worst forms of the offense; (2) those posing the greatest likelihood of committing future crimes; (3) certain major drug offenders as set forth in R.C. 2929.14(D)(3); and (4) certain repeat violent offenders as set forth in R.C. 2929.14(D)(2). R.C. 2929.14(C). The only category relevant to this appeal is whether Mr. Lyons "committed the worst forms of the offense[.]" See id.
 {¶ 34} In order for a sentence to withstand appellate scrutiny, the trial court must make a finding with respect to one of the four categories and specify its reasons for imposing the maximum sentence. R.C. 2929.19(B)(2)(d). See, also, State v. Edmonson (1999),86 Ohio St.3d 324, 329.
 {¶ 35} In the present case, when sentencing Mr. Lyons, the trial court stated the following:
 {¶ 36} "The Court would note that in this case the medical bills of the victim, to date, are in excess of $100,000, and * * * [t]he victim * * * is * * * unable to work. * * * [H]e suffered both physical and economic harm, and psychological harm, for that matter.
 {¶ 37} "The Court would also note that in the seventeen years that this Court has been a Judge, * * * this is the worst case of physical assault it has seen, where the victim did not die.
 {¶ 38} "This Court does find that [Mr. Lyons] committed the worst form of the offense. * * * The reason why I think it was the worst form of the offense[: (1)] the victim is permanently damaged; [(2)] he suffered brain damage and [cannot] work anymore; [(3)] there were four defendants involved who basically surrounded this man[.]"
 {¶ 39} In the instant case, the trial court was presented with evidence that would allow it to conclude that Mr. Lyons had committed the worst form of the offense. Consequently, we find that the trial court properly determined, based upon the evidence presented, that Mr. Lyons committed the worst form of the offense, and that the trial court properly imposed the maximum prison term. Mr. Lyons' fourth assignment of error is overruled.
 III. {¶ 40} Mr. Lyons' assignments of error are overruled. The convictions in the Medina County Court of Common Pleas are affirmed.
Judgment affirmed.
Slaby, P.J. Concurs.
Baird, J. Concurs in Judgment Only.