DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Donovan Tanner, alias Donny Tanner, appeals from his conviction and sentence in the Medina County Court of Common Pleas for rape. We affirm.
 I. {¶ 2} During the evening of Saturday, April 19, 2003, the day before Easter Sunday, Mr. Tanner went to the family home of the victim, J.T. Mr. Tanner is the first cousin of J.T.J.T. has five living siblings, and she shares a bedroom with her two sisters, Ruby and Tara. That evening, however, Tara and Ruby spent the night at an aunt's house. At approximately 9:30 p.m., J.T.'s parents, Mike and Rhonda Tanner, retired to their bedroom.
 {¶ 3} J.T. recounted the events that occurred that night as follows: J.T., Mr. Tanner, and J.T.'s brother Roger and his girlfriend, Naomi Lunsford, were sitting in J.T.'s bedroom talking. At some point, Roger and Naomi left the room because it was getting late, and J.T. was left alone in the room with Mr. Tanner. J.T. never left her bedroom after the point that Roger and Naomi left the room. J.T. was sitting on Tara's bed, which was opposite her bed in the room. Mr. Tanner was sitting next to J.T. on the bed, but then moved from Tara's bed to sit on J.T.'s bed. Mr. Tanner then asked J.T. to scratch his back; J.T. moved over to her own bed to do so. The two started to talk about a new pair of shoes that J.T. had just bought, which led to a conversation concerning "if the shoe size was like the size of what the guy's penis was." Mr. Tanner answered the question in the negative, but did tell J.T. that "the width, what it would be would be your first finger and middle finger together." Mr. Tanner then asked J.T. whether "he could try to see if he could fit." J.T. then allowed Mr. Tanner to insert his two fingers into her vagina while she lay on her bed; at some point before this, J.T. had pushed her shorts off her waist. Mr. Tanner then unzipped his pants, and, without using a condom, inserted his penis into J.T.'s vagina. Mr. Tanner did not use force, and at that point in time, she assented to this action. After a few minutes, Mr. Tanner pulled out his penis, and J.T. saw him reach down with his hand. When J.T. got on her side to pull her shorts back up, she felt that the bed sheets were wet, and she identified the wetness as semen. J.T. then crawled over to Tara's bed and fell asleep while Mr. Tanner remained on her bed. J.T. had told Mr. Tanner that he could sleep in her bed because he had caused the wetness.
 {¶ 4} When J.T. awoke the next day, Easter Sunday, Mr. Tanner was not in the bedroom. J.T. and her family then went to her grandmother's house for Easter dinner. While at her grandmother's house, J.T. told Naomi about the incident, telling her that she had done "something bad," that she had "slept with Donny." J.T. confided in Naomi because she was afraid of possible pregnancy. Naomi confronted Rhonda, asking her if she had spoken to J.T. because J.T. had something to tell her. After dinner, J.T. returned home with her parents, Roger, and Naomi. While Rhonda was taking a bath, J.T. burst into the bathroom crying, and told Rhonda about the incident that occurred between her and Mr. Tanner the night before, that she had "slept with Donny[,]" and that she was afraid that she was pregnant and of getting in trouble for "[s]leeping with an older guy." Rhonda then called the police, despite J.T.'s threats of suicide if her mother did so.
 {¶ 5} Detective Sergeant Gary Hubbard arrived at the house, and J.T. told him what had happened. Rhonda then took J.T. to Akron Children's Hospital, where J.T. was examined and a rape kit performed. After the examinations were done, Detective Hubbard transported Rhonda and J.T. back to their home, and collected bedding from the bed on which J.T. asserted the incident took place.
 {¶ 6} On December 3, 2003, Mr. Tanner was indicted for rape, in violation of R.C. 2907.02(A)(1)(b), a first degree felony. Mr. Tanner was tried by a jury, which returned a guilty verdict. The trial court sentenced Mr. Tanner to four years in prison, and found him to be a sexually oriented offender. This appeal followed.
 {¶ 7} Mr. Tanner timely appealed, asserting three assignments of error for review. We address Mr. Tanner's second assignment of error first.
 II. A. Second Assignment of Error
"The court improperly denied defendant's motion for acquittal per crim. Rule 29."
 {¶ 8} In his first assignment of error, Mr. Tanner asserts that the court erred when it denied his Crim.R. 29 motion for acquittal.
 {¶ 9} We observe that Mr. Tanner's counsel failed to renew his motion for acquittal at the close of Mr. Tanner's presentation of evidence. In order to preserve the right to appeal the sufficiency of the evidence upon which a conviction is based, a defendant must file a timely Crim.R. 29 motion for acquittal with the trial court, and must also renew the motion at the close of all the evidence. State v. Lyons, 9th Dist. No. 03CA0023-M, 2003-Ohio-5783, at ¶ 4. Therefore, Mr. Tanner has waived any challenge to the sufficiency of the evidence supporting his conviction, and thus cannot raise it on appeal. Accordingly, Mr. Tanner's second assignment of error is overruled.
 B. First Assignment of Error
"The defendant's conviction was against the manifest weight of the evidence."
 {¶ 10} In his second assignment of error, Mr. Tanner asserts that his rape conviction was against the manifest weight of the evidence. We disagree.
 {¶ 11} When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} R.C. 2907.02(A)(1)(b), of which Mr. Tanner was convicted, provides, "No person shall engage in sexual conduct with another who is not the spouse of the offender * * *, when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." J.T. was twelve years old at the time the incident occurred. She testified that she and Mr. Tanner both knew that what they had done was wrong, and that Mr. Tanner had advised her not to tell anyone what had happened because they could both get in trouble.
 {¶ 13} On appeal, Mr. Tanner essentially requests this Court to find his version of the events more credible than those of the victim, J.T. Mr. Tanner contends that he never engaged in sexual conduct with J.T. On April 21, 2003, Mr. Tanner did return to J.T.'s home and denied to her family ever having sex with J.T. At trial, Mr. Tanner denied ever touching or having sex with J.T. Mr. Tanner maintained at trial that he was in J.T.'s room that night, but that J.T. was not in the room.
 {¶ 14} At trial, Roger Tanner testified that he did not recall that he, Mr. Tanner, J.T., and Naomi were ever in J.T.'s room together. Roger also maintained that the night of April 19, 2003, he slept in the living room, and that Mr. Tanner had slept there, as well. Roger admitted that he was close friends with Mr. Tanner and that he wished that the prosecution of this case would not have proceeded.
 {¶ 15} J.T.'s older brother, Daniel Tanner, testified, that, being best friends with Mr. Tanner he also did not wish that the case was prosecuted. Additionally, he testified that he confronted Mr. Tanner about the incident on the Sunday evening, and that Mr. Tanner had denied any involvement with J.T.
 {¶ 16} Roger's girlfriend Naomi testified that that they did not spend any time in J.T.'s room that night, and that instead the four had sat downstairs and talked. She testified that she knew that Mr. Tanner had slept downstairs that night because at some point she and J.T. went upstairs to sleep.
 {¶ 17} However, Mr. Tanner testified himself that he in fact did sleep in the same room as J.T. that night, and not downstairs as the others had testified. Mr. Tanner had told Detective Hubbard during an interview that on the evening in question, that he, Roger, and Naomi went into J.T.'s bedroom, and that when everyone was retiring to bed, Roger had told him he could just sleep in one of their beds, in J.T.'s room. Mr. Tanner said that he lay down on J.T.'s lower bunk bed, that J.T. went downstairs, and that he just fell asleep. However, he also told Detective Hubbard that he had masturbated onto the bed and ejaculated directly onto the bed before going to sleep, claiming that there were no bed sheets on the mattress at the time, and then used sheets, which evidently were lying on the side of the bed, to clean up and cover himself up after the fact. He claimed that all this occurred while J.T. was out of the room. Mr. Tanner then told Detective Hubbard that he woke up in the morning and saw J.T. sleeping on the other bed across from him. Mr. Tanner stated that the day after Easter Sunday, he returned to J.T.'s house and was confronted by her older brother Danny, who told him that J.T. claimed that he had slept with her.
 {¶ 18} Mr. Tanner maintains that there was no physical evidence linking him to any sexual conduct with J.T. Specifically, Mr. Tanner points to the fact that J.T.'s medical examination revealed no evidence of any injuries or tears in her hymen or semen in her vagina. Jennifer Mosel from the Bureau of Criminal Identification and Investigation did testify that she found no semen on the vaginal, rectal, and oral smear slides from the rape kit. However, the term "sexual conduct," as proscribed by R.C. 2907.02 and defined in R.C. 2907.01(A), does not require proof of trauma or the presence of semen to sustain a rape conviction. State v.Barnes (Oct. 22, 1980), 1st Dist. Nos. C-790595, C-790622, C-790636, at *19. Not all rape victims manifest physical injuries as a result of the crime, and physical injury is not a condition precedent to a rape conviction. State v. Reinhardt, 10th Dist. No. 04AP116, 2004-Ohio-6443, at ¶ 29, citing State v. Van Buskirk (Sept. 29, 1994), 8th Dist. No. 57800, at *19. "[T]he absence of any physical evidence of the use of force against a rape victim does not render a conviction invalid." Statev. Flowers (May 4, 2000), 10th Dist. No. 99AP-530, at *24.
 {¶ 19} Mosel also testified that her testing of J.T.'s bed sheet confirmed the presence of semen. She testified that she was never requested to do a DNA analysis of the materials. Mr. Tanner takes issue with the fact that the State never requested DNA testing, and that there was no conclusive evidence to show whose semen was on J.T.'s bed sheets. However, there is no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction. State v. Sklenar (1991), 71 Ohio App.3d 444, 447, citingState v. Gingell (1982), 7 Ohio App.3d 364, 365; State v. Love
(1988), 49 Ohio App.3d 88, 91.
 {¶ 20} Furthermore, the registered nurse who examined J.T. at Akron Children's Hospital, Donna Abbot, testified that it is normal for a rape victim of J.T.'s age not to show signs of physical trauma, and specifically, that it is very likely that a hymen is not damaged despite complete penetration having occurred. J.T. remembered that she was nervous and crying when she told her mother, and expressed guilt over the incident, and she knew that what she had done was wrong. J.T. did not want Rhonda to call the police because she did not want Mr. Tanner, her cousin with whom she had a decent relationship before the incident, to get in trouble. Although J.T. expressed that she did not even want to testify in court as to the entire incident, she stated that she did not have a choice but to do so because of the possibility that Mr. Tanner "does it to some other little girl." Additionally, her mother Rhonda testified that J.T. never recanted her story.
 {¶ 21} Based upon the foregoing, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Mr. Tanner of rape. See Otten, 33 Ohio App.3d at 340. Although conflicting testimony was presented at trial, we refuse to overturn the verdict because the jury chose to believe other testimony. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the jury believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at 4. Furthermore, the jury as the fact finder was entitled to believe J.T.'s story over that of Mr. Tanner. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} Therefore, we conclude that Mr. Tanner's conviction for rape was not against the manifest weight of the evidence. Accordingly, Mr. Tanner's first assignment of error is overruled.
 C. Third Assignment of Error
"The court improperly denied defendant's effort to have credibility challenged by claims regarding what the victim says about her prior sexual behavior."
 {¶ 23} In his third assignment of error, Mr. Tanner asserts that the trial court erred when it sustained the State's objection to defense counsel's attempt to elicit information from Roger Tanner during cross examination regarding specific instances of J.T.'s conduct indicating J.T.'s untruthfulness.
 {¶ 24} We observe that Mr. Tanner has failed to meet his burden of demonstrating this alleged error on appeal. An appellant bears the burden of affirmatively demonstrating the error on appeal, and substantiating his or her arguments in support. Angle v. W. Res. Mut. Ins. Co. (Sept. 16, 1998), 9th Dist. No. 2729-M, at 2; Frecska v. Frecska (Oct. 1, 1997), 9th Dist. No. 96CA0086, at 4. See, also, App.R. 16(A)(7) and Loc.R. 7(A)(7). Moreover, it is not the duty of this Court to develop an argument in support of an assignment of error if one exists. Cardone v.Cardone (May 6, 1998), 9th Dist. Nos. 18349 and 18673, at 18.
 {¶ 25} In this case, Mr. Tanner has failed to include any pertinent references to the record in support of this assignment of error. Loc.R. 7(E) provides that "[r]eferences to the pertinent parts of the record shall be included in the * * * argument section of the brief. If a party fails to include a reference to a part of the record that is necessary to the court's review, the court may disregard the assignment of error or argument." When an appeal comes before this Court for review, "[i]t is not the function of this [C]ourt to construct a foundation for a party's claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal." Kremer v. Cox
(1996), 114 Ohio App.3d 41, 60.
 {¶ 26} For the foregoing reason, Mr. Tanner has failed to meet his burden on appeal, and therefore, we may disregard his third assignment of error. See Loc.R. 7(E); Smith v. Akron Dept. Public Health, 9th Dist. No. 21103, 2003-Ohio-93. Accordingly, Mr. Tanner's third assignment of error is overruled.
 III. {¶ 27} Mr. Tanner's first, second, and third assignments of error are overruled. Mr. Tanner's conviction and sentence in the Medina County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Whitmore, J., concur.