OPINION
{¶ 1} Defendant-appellant, Michael A. Henderson, appeals from a judgment of conviction and sentence imposed by the Franklin County Court of Common Pleas. For the following reasons, we affirm in part and reverse in part and remand the matter for resentencing.
 {¶ 2} In the summer of 2002, A.B.[1] attended The Ohio State University. She met appellant in a math class and they began dating. She described the relationship as a decent one, but one in which they regularly argued and had occasional violent outbursts. By the end of August, A.B. learned that she was pregnant. A.B. and appellant had discussions about ending the pregnancy, but appellant told her that he wanted to be a father. At this time, A.B. moved into an apartment near the university's campus. Although appellant did not live with her, he often stayed at her apartment and had keys to the apartment.
 {¶ 3} On the afternoon of October 1, 2002, A.B. set up a new computer in her apartment. Appellant was supposed to help her with the computer but did not arrive when expected. Appellant eventually showed up around 9 p.m. and told A.B. that he had been drinking at a bar. Shortly thereafter, he left to buy more beer and quickly returned with a 12-pack of beer. Appellant and A.B. began arguing after appellant told her that he scheduled an appointment for her to get an abortion. A.B. told him to leave the apartment and that they would discuss the matter the next day. Appellant attempted to initiate sex with A.B. but she rejected his overtures. At around 9:30 or 9:45 p.m., A.B. again asked appellant to leave the apartment and he complied. A.B. did not know where appellant went.
 {¶ 4} Later that night, appellant called A.B. and began arguing with her again. A.B. testified that the caller I.D. on her phone indicated that the phone call came from appellant's mother's house. A.B. told appellant that she wanted him to remove his stuff from her apartment. Appellant said he wanted to come over that night to get his stuff, but A.B. again told him that it would be better if he came over the next day. Nevertheless, at around 10:30 p.m., appellant showed up at the apartment and began to gather his things. A.B. came out of her bedroom to protect her property and sat down in front of her new computer. As she sat there, appellant walked over to her and punched her in the eye. A.B. reached for the phone, but appellant grabbed her and threw the phone away. A.B. then ran into the bedroom to yell out the window for help. Appellant followed her and tackled her to the ground. He pushed her face into the carpet and held her down with his body, telling her not to scream. After 15 to 20 minutes of struggling like this, appellant flipped A.B. over and told her that he wanted to have sex with her. Appellant tore A.B.'s boxer shorts off. A.B. fought with appellant and tried to keep her knees together, but appellant forced her legs apart with his own legs, held her arms back, and vaginally raped her, although he did not ejaculate.
 {¶ 5} During the struggle, A.B. bit appellant's nose. His nose began bleeding profusely. Appellant stopped the act of rape and they began to talk about their relationship. A.B. testified that she used this break to try and calm appellant down. Ultimately, appellant ended the discussion and told A.B. that he was not leaving until he had sex with her. When she still refused, appellant stated that he would just knock her out and have sex with her. With that threat in her mind, A.B. gave in to his demand and had sex with appellant until he ejaculated. Thereafter, appellant blocked the door and told A.B. that he was not letting her leave and that they were going to have a lot more sex that night. They then left the bedroom and went into the bathroom. Appellant saw his nose in the mirror and told A.B. that he should kill her. At that point, A.B. ran out of the apartment to find help. She got a phone from someone on the street and called 911. Police officers from the Columbus Police Department were dispatched to A.B.'s location around 11:45 p.m. They met A.B. and took her back to her apartment. Subsequently, they found and arrested appellant at his mother's house. Appellant had noticeable, fresh scratches on his chest and neck area and was bleeding from a nose wound.
 {¶ 6} As a result of these events, appellant was charged with one count of kidnapping in violation of R.C. 2905.01(A)(4) with a sexually violent predator specification pursuant to R.C. 2941.148, two counts of rape in violation of R.C. 2907.02(A)(2), one count of attempted rape in violation of R.C. 2923.02 and 2907.02, and one count of abduction in violation of R.C. 2905.02. Appellant entered not guilty pleas to the charges and proceeded to a jury trial. At trial, appellant claimed that he and the victim had consensual sex but later fought when he told her that he made an appointment for her to get an abortion. The jury acquitted appellant of attempted rape but found him guilty of the other charges. The sexually violent predator specification was tried to the court at a later hearing. After that hearing, the trial court declared appellant to be a sexually violent predator.[2] The trial court then sentenced appellant to consecutive eight-year prison terms for each charge for a total of 24 years in prison.[3] The trial court imposed an additional life sentence for appellant's conviction of the sexually violent predator specification.
 {¶ 7} Appellant appeals, assigning the following errors:
First Assignment of Error: The court erroneously found appellant a sexually violent predator as count of one [sic] of the indictment did not carry a specification alleging the predicate offense of kidnapping was sexually motivated, and the remaining counts did not carry sexually violent predator specifications.
Second Assignment of Error: Imposition of consecutive sentences on counts one, two and three based on facts not found by the jury nor admitted by the defendant violated his right to trial by jury as guaranteed by the Sixth Amendment of the United States Constitution and Article I, Section 10 of the Ohio Constitution.
Third Assignment of Error: Kidnapping, as charged in count one of the indictment, and rape, as charged in counts two and three, are allied offenses of similar import committed with a single animus. The court erred by imposing consecutive sentences when it should have directed the prosecutor to elect on which offenses conviction would be entered and sentence pronounced.
Fourth Assignment of Error: The prosecutor improperly exercised three of his four preemptory challenges to remove African-American jurors.
Fifth Assignment of Error: By in effect becoming a witness, the prosecutor engaged in misconduct warranting reversal.
Sixth Assignment of Error: Appellant's convictions were against the manifest weight of the evidence.
Seventh Assignment of Error: The evidence does not support the finding appellant is a sexually violent predator.
Eighth Assignment of Error: The facts of this case do not warrant the imposition of consecutive sentences.
Ninth Assignment of Error: Appellant received ineffective assistance of counsel insofar as counsel failed to properly respond to a reported attempt at influencing the jury.
 {¶ 8} For ease of analysis, we will address appellant's assignments of error out of order. We begin with appellant's fourth assignment of error, which addresses the state's use of preemptory challenges. Specifically, appellant contends the state exercised three of its four preemptory challenges to remove African-Americans from the jury in violation of Batson v. Kentucky (1986), 476 U.S. 79, 106 S.Ct. 1712. We disagree.
 {¶ 9} In Batson, the Supreme Court of the United States held that the Equal Protection Clause of the United States Constitution precludes purposeful discrimination by the state in its exercise of its preemptory challenges as to exclude members of minority groups from service on petit juries. Id. at 89; State v. Ingram, Franklin App. No. 01AP-1343, 2002-Ohio-5012, at ¶ 4. Batson applies even when a criminal defendant is not the same race as the excluded jurors. Id.; Powers v. Ohio (1991),499 U.S. 400, 111 S.Ct. 1364. The ultimate burden of persuasion is on the defendant to show that the state used a preemptory challenge in a discriminatory manner. Ingram, at ¶ 17, citing State v. Gowdy (2000),88 Ohio St.3d 387.
 {¶ 10} A three-step burden shifting procedure is used to determine whether the state's preemptory challenge is race based. First, the defendant, as the proponent of the challenge, must make a prima facie showing that the state purposefully discriminated in exercising a preemptory challenge to remove a prospective juror. To make a prima facie case of purposeful discrimination, the defendant must demonstrate (1) that members of a cognizable racial group were peremptorily challenged; and (2) that the facts and any other relevant circumstances raise an inference that the state used the peremptory challenges to exclude jurors on account of their race. State v. Hill (1995), 73 Ohio St.3d 433, 444-445.
 {¶ 11} The burden then shifts to the state to provide a race neutral-explanation. Id. at 445. The neutral reason given by the state need not rise to the level justifying exercise of a challenge for cause.Batson, at 97. In fact, the United States Supreme Court has held that the second step of this process does not demand an explanation that is persuasive, or even plausible. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Purkett v. Elem (1995), 514 U.S. 765, 768, 115 S.Ct. 1769, quoting Hernandez v. New York (1991), 500 U.S. 352, 360, 111 S.Ct. 1859,1866 (plurality opinion).
 {¶ 12} Finally, the trial court must determine if the defendant has established purposeful discrimination. Batson, at 98. The United States Supreme Court noted in Hernandez that "[i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge." Hernandez, at 365. This court must give the findings of the trial court great deference, since those findings rest largely upon the court's evaluation of the prosecutor's credibility. Id.; State v.Bannerman (Mar. 4, 1997), Franklin App. No. 96APA06-791. As a result, we may reverse only upon a finding that the trial court's decision was clearly erroneous, that is so lacking in support in the evidence that to give it effect would work that fundamental unfairness which is at war with due process or equal protection. State v. Hernandez (1992),63 Ohio St.3d 577, 583. To overturn the trial court's finding that there was no discriminatory intent, this court must be left with the definite and firm conviction that a mistake was committed. State v. Belcher
(1993), 89 Ohio App.3d 24, 30. The establishment of a prima facie case becomes moot once the prosecutor offers a race-neutral explanation for the preemptory challenge and the trial court rules on the ultimate issue of discrimination. Hernandez v. New York, supra, at 359; State v.White (1999), 85 Ohio St.3d 433, 437.
 {¶ 13} In the case at bar, after the prosecutor excused two African-Americans from the venire, defense counsel raised a Batson
challenge to those preemptory challenges. The prosecutor explained that he excused the first African-American juror, Mr. Lumpkin, because he seemed very confused when he was asked how to determine the credibility of a witness. Next, the prosecutor explained that he excused Mr. Alverson, the second African-American juror, because Mr. Alverson was soft spoken and the prosecutor was concerned that Mr. Alverson would not be a good member of the jury during its deliberations. The trial court found the prosecutor's neutral reasons to be sufficient and overruled appellant's Batson challenge.
 {¶ 14} Defense counsel raised a second Batson challenge after the prosecutor exercised another preemptory challenge to exclude Ms. Jones, another African-American juror, from the venire. The prosecutor explained that Ms. Jones was 71 years old and an active member of her church, and he felt that she might be offended at the lifestyle of the victim and think that the victim was a woman of loose morals. Again, the trial court found the prosecutor's race-neutral reason to be sufficient and overruled appellant's Batson challenge.
 {¶ 15} The trial court found the prosecutor presented legitimate, race-neutral explanations for its preemptory challenges. Based upon our review of the transcript in this case, and giving due deference to the trial court's conclusion, we cannot say that the trial court's finding was clearly erroneous. State v. Hernandez, supra. The trial court was in the best position to assess the validity of the prosecutor's explanation for the preemptory challenges. Therefore, the trial court did not clearly err by accepting the prosecutor's race-neutral explanations for its challenges to each juror. Appellant's fourth assignment of error is overruled.
 {¶ 16} Appellant contends in his fifth assignment of error that the prosecutor engaged in misconduct by, in essence, acting as a witness. Generally, prosecutorial misconduct is not a basis for overturning a criminal conviction, unless, on the record as a whole, the misconduct can be said to have deprived the defendant of a fair trial. State v. Lott
(1990), 51 Ohio St.3d 160, 166. When the alleged prosecutorial misconduct relates to remarks, the test is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. State v. Bey (1999), 85 Ohio St.3d 487, 494; State v. Turner,
Franklin App. No. 04AP-364, 2004-Ohio-6609, at ¶ 22. The focus of that inquiry is on the fairness of the trial, not the culpability of the prosecutor. Bey, at 495.
 {¶ 17} Appellant claims that the prosecutor committed prosecutorial misconduct when he used his cross-examination of appellant's mother to bring before the jury matters within the prosecutor's knowledge, but not within the knowledge of the witness. Appellant's mother testified that appellant came home on the night in question around 11 p.m. and was not home before that time. Her testimony contradicted A.B.'s testimony that appellant called A.B. from his mother's house earlier that evening. Apparently, the prosecutor did not know that appellant's mother was going to testify and it was too late to obtain her phone records. Appellant contends the prosecutor improperly asked appellant's mother questions about the availability of phone records. The prosecutor's questions suggested that the appellant's mother would have obtained these phone records if they would have corroborated her testimony.
 {¶ 18} The alleged misconduct of a prosecutor during trial is not a basis for error unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 24. The effect of the alleged misconduct must be judged in the context of the entire trial. State v. Keenan (1993), 66 Ohio St.3d 402, 410, citing Donnellyv. DeChristoforo (1974), 416 U.S. 637, 94 S.Ct. 1868. One factor relevant to this analysis is whether the alleged misconduct was an isolated incident in an otherwise properly tried case. Keenan, at 410. Based on the record here, we conclude that the prosecutor's questions to appellant's mother regarding the availability of phone records, although improper, were not significant enough to deprive appellant of a fair trial when viewed within the context of the entire trial.
 {¶ 19} We also cannot say that the prosecutor's questions prejudicially affected the substantial rights of the appellant. On two occasions, the trial court specifically instructed the jury that the attorneys are not witnesses and that any statements made by an attorney shall not be considered as evidence. After the prosecutor's alleged "testimony" occurred, the trial court told the jury to disregard the prosecutor's statement. A jury may be presumed to follow the instructions of the court. State v. Jordan, Franklin App. No. 04AP-827, 2005-Ohio-3790, at ¶ 21, citing Pang v. Minch (1990), 53 Ohio St.3d 186, 195. Therefore, any alleged "testimony" offered by the prosecutor was not considered by the jury in its deliberations and could not have prejudiced appellant.
 {¶ 20} Appellant's fifth assignment of error is overruled.
 {¶ 21} Appellant contends in his sixth assignment of error that his convictions were against the manifest weight of the evidence. When presented with a challenge to the manifest weight of the evidence, an appellate court, after "`reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175. An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most "`exceptional case in which the evidence weighs heavily against the conviction.'" Id.
 {¶ 22} A defendant is not entitled to a reversal on manifest weight grounds merely because inconsistent evidence was presented at trial.State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21. The determination of weight and credibility of the evidence is for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212. The trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and to determine whether the witnesses' testimony is credible. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 58; State v.Clarke (Sept. 25, 2001), Franklin App. No. 01AP-194. Consequently, although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give great deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 23} Appellant contends that his convictions are against the manifest weight of the evidence because the victim's testimony is not credible. Specifically, he points to A.B.'s testimony that, he claims, implies "unhappy submission rather than submission to force." He also argues that A.B. fled the apartment not because she had been raped but because she feared for her life. Further, appellant claims that the victim's testimony about his phone call to her earlier that evening was contradicted by appellant's mother's testimony that appellant was not at his mother's house until sometime after 11 p.m. Therefore, appellant contends he could not have called the victim from his mother's house. Lastly, appellant contends that the physical evidence does not support rape convictions and that the victim's ankle bruises may have been caused by her employment as a dancer.
 {¶ 24} The jury heard all of the testimony presented and obviously chose to believe the victim's version of events, notwithstanding the points appellant raises in this assignment of error. The determination of weight and credibility of the evidence is for the trier of fact. DeHass,
supra. The trier of fact was free to believe the state's witness over appellant's version of events. State v. Robinson, Cuyahoga App. No. 82261, 2003-Ohio-4666, at ¶ 20. A.B. testified to a violent confrontation that ended with appellant raping her. She described appellant's threat to harm her and her submission to him due to fear of physical harm. There is nothing in the record that causes us to conclude that A.B.'s testimony was not credible, as a matter of law. The jury did not clearly lose its way when it chose to believe A.B.'s testimony over appellant's version of events. See State v. Tanner, Medina App. No. 04CA0062-M, 2005-Ohio-998, at ¶ 21; State v. McLean, Franklin App. No. 04AP-527, 2005-Ohio-3274, at ¶ 34.
 {¶ 25} Additionally, the absence of any physical evidence of the use of force does not invalidate the conviction. State v. Flowers (May 4, 2000), Franklin App. No. 99AP-530. Not all rape victims exhibit signs of physical injury. Tanner, supra, at ¶ 18. In fact, the sexual assault nurse who treated the victim in this case testified that approximately 85 percent of the rape cases she sees do not have any visible injuries. Therefore, the absence of physical injuries or trauma alone does not establish that a rape conviction is against the manifest weight of the evidence.
 {¶ 26} We conclude that the convictions are not against the manifest weight of the evidence and the jury did not clearly lose its way when it convicted appellant in this case. Accordingly, appellant's sixth assignment of error is overruled.
 {¶ 27} Appellant's next several assignments of error concern sentencing matters. In his first and seventh assignments of error, appellant contends that the trial court erred when it found him to be a sexually violent predator. The state concedes that the trial court erred in this regard, and we agree. In order for a trial court to find a defendant to be a sexually violent predator, the defendant must have been convicted of a sexually violent offense. R.C. 2971.01(H)(1). Sexually violent offenses are broken down into two categories. R.C. 2971.01(G). First are crimes which are defined as violent sex offenses in R.C. 2971.01(L). Those include rape, sexual battery, the former offense of felonious sexual penetration, and gross sexual imposition of a child under the age of 13. Although appellant was convicted of two counts of rape, those charges did not contain sexually violent predator specifications and, therefore, they could not support a finding that appellant was a sexually violent predator.
 {¶ 28} The other group of offenses that are defined as violent sex offenses are designated homicide, assault or kidnapping offenses for which the offender was also convicted of or pleaded guilty to a sexual motivation specification. R.C. 2971.01(G). A sexual motivation specification alleges that the defendant committed the designated offense with a sexual motivation. R.C. 2971.01(K). Appellant was charged with a sexually violent predator specification as part of his kidnapping charge. For kidnapping to be a violent sex offense to support a sexually violent predator specification, however, the charge must also have a sexual motivation specification. Appellant was not charged with a sexual motivation specification as part of his kidnapping charge. Therefore, appellant's kidnapping conviction could not support a finding that appellant was a sexually violent predator.
 {¶ 29} Accordingly, because appellant's kidnapping conviction could not be a statutorily-defined violent sex offense, and because his rape charges did not include sexually violent predator specifications, the trial court erred in finding him a sexually violent predator. Appellant's first assignment of error is sustained. Our disposition of this assignment of error renders moot appellant's seventh assignment of error, which addressed the factual basis for the trial court's sexually violent predator specification finding. App. R. 12(A).
 {¶ 30} In his second assignment of error, appellant contends that his consecutive sentences were imposed contrary to the Sixth Amendment of the United States Constitution, Section 10, Article I of the Ohio Constitution and the Supreme Court of the United States' recent opinion in Blakely v. Washington (2004), 542 U.S. 296, 124 S.Ct. 2531. This court recently considered and rejected this argument in State v. Abdul-Mumin,
Franklin App. No. 04AP-485, 2005-Ohio-522, at ¶ 30. Accordingly, we overrule appellant's second assignment of error.
 {¶ 31} Appellant contends in his third assignment of error that his kidnapping and rape convictions are allied offenses of similar import committed with a single animus and that they should have been merged for sentencing in accordance with R.C. 2941.25. Appellant did not request merger and did not object to the trial court's failure to merge these offenses. A defendant's failure to raise the issue of allied offenses of similar import at the time of his conviction or sentencing results in a waiver of an allied offense claim on appeal absent plain error. State v.Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 74; State v.Houser (May 30, 1996), Cuyahoga App. No. 69639. Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 32} The Double Jeopardy Clauses of the United States and Ohio Constitutions protects criminal defendants from multiple punishments for the same offense. State v. Rance (1999), 85 Ohio St.3d 632, 634. Ohio's General Assembly has indicated its intent to permit or prohibit cumulative punishments for the commission of certain offenses through the multiple-count statute set forth in R.C. 2941.25. Rance at 635. That statute requires merger of separate counts of an indictment for purposes of sentencing as follows:
(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
 {¶ 33} Accordingly, to decide whether a criminal defendant may be convicted of multiple counts, a trial court must first determine whether the offenses are allied offenses of similar import. Rance, at 636. Rape, in violation of R.C. 2907.02(A)(2), and kidnapping, in violation of R.C. 2905.01(A)(4), are allied offenses of similar import. See State v.Donald (1979), 57 Ohio St.2d 73, syllabus; Williams, at ¶ 72; State v.Collins, Ross App. No. 01CA-2590, 2002-Ohio-3212, at ¶ 19; State v.Nixon (Apr. 25, 2001), Lorain App. No. 00CA007638.
 {¶ 34} Because the kidnapping and rape charges in this case are allied offenses of similar import, appellant could only be convicted of both offenses if the crimes were committed separately or with a separate animus. Id.; Collins, at ¶ 17. The Supreme Court of Ohio has established the following principles to determine whether kidnapping and an offense of similar import are committed with a separate animus:
Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions.
State v. Logan (1979), 60 Ohio St.2d 126, syllabus.
 {¶ 35} A.B. testified that after appellant hit her in the face, she ran into the bedroom to try and yell for help. Appellant followed her, tackled her to the floor, and pressed her face in the carpet to prevent her from yelling. Appellant was on top of her, holding down her legs with his legs and holding her arms with his arms. His entire body was on top of her, holding her down, and pressing her face into the carpet. A.B. testified that this lasted for 15 to 20 minutes, until he flipped her over and wanted to have sex with her. Additionally, A.B. testified that after the second rape, appellant stood in front of the bedroom door and told her that he was not letting her leave. Given the length of time appellant restrained the victim before he began to rape her, as well as appellant's conduct after the second rape, we cannot say that the restraint in this case was merely incidental to the rape offense. Accordingly, the offenses were committed with a separate animus, and the trial court did not commit plain error when it failed to merge the kidnapping offense with the rape offense. Appellant's third assignment of error is overruled.
 {¶ 36} Next, appellant contends in his eighth assignment of error that the trial court erred when it imposed consecutive sentences of imprisonment. To impose consecutive sentences, a trial court must make specific findings under R.C. 2929.14(E)(4) and state its reasons for making those findings. R.C. 2929.19(B)(2)(c); State v. Scott, Franklin App. No. 01AP-801, 2002-Ohio-2251, at ¶ 8-12. R.C. 2929.14(E)(4) provides that the trial court may require an offender to serve consecutive prison sentences if it finds: (1) that consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) that any of the following apply:
(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by the two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 {¶ 37} While the sentencing statutes do not require "rote incantations" of specific language, they do require the trial court to clearly set forth its findings, as well as to include a cogent explanation of the reasons supporting those findings. State v. Aliane,
Franklin App. No. 01AP-1110, 2002-Ohio-2932, at ¶ 48.
 {¶ 38} Appellant does not contend that the trial court failed to make the findings required under R.C. 2929.14(E)(4). Rather, he contends that consecutive sentences are disproportionate to the seriousness of his conduct. We disagree. During appellant's sentencing hearing, the trial court noted that appellant had a previous rape conviction less than six years ago and that the offenses in the case at bar occurred while he was on post-release control and participating in sex-offender treatment. The trial court also considered the victim's statement, in which she described how she dropped out of school, went to counseling and incurred substantial medical bills as a result of this attack. These reasons support the trial court's findings and justify consecutive sentences. Appellant's eighth assignment of error is overruled.
 {¶ 39} Finally, appellant contends in his ninth assignment of error that he received ineffective assistance of counsel. Specifically, appellant claims that his trial counsel failed to properly respond to an alleged attempt to influence the jury. In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated in Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052; accord State v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth
Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690.
 {¶ 40} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Id. at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 41} In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v.Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 42} According to a letter appellant's mother wrote to the trial court judge, she was outside of the courtroom during the trial when she saw the jury in the hallway walking to the elevators. She then heard a man who she thought was the victim's stepfather yell "Is that your boy, the rapist? Too bad they don't know about his priors!" She thought that some of the jury members may have heard the man and told appellant's counsel about the incident. The next day, defense counsel brought the incident to the trial court's attention but told the court that the jury was in the jury room during the incident. Therefore, he did not request the trial court to question the jurors to determine whether any of them heard the man's comments.
 {¶ 43} We have no way to determine whether or not the jury could have heard the alleged statement by the victim's stepfather. Defense counsel informed the trial court of the allegation and described the circumstances to the best of his knowledge. Presumably, the trial court was in the best position to ascertain whether the jury could have heard the comment. The fact that appellant's mother has a different opinion about whether some members of the jury could have heard the comment does not establish ineffective assistance of counsel. Accordingly, appellant's ninth assignment of error is overruled.
 {¶ 44} In conclusion, we overrule appellant's second, third, fourth, fifth, sixth, eighth and ninth assignments of error. We sustain appellant's first assignment of error, a disposition that renders appellant's seventh assignment of error moot. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and we remand the matter for resentencing without the sexually violent predator specification.
Judgment affirmed in part and reversed in part; and cause remanded withinstructions.
Brown, P.J., and Bryant, J., concur.
[1] To protect her identity, the victim is referred to by her initials only.
[2] The court also, pursuant to R.C. 2950.09, declared appellant a sexual predator.
[3] The trial court sentenced appellant on the kidnapping and rape charges. The trial court merged the abduction charge with the kidnapping charge for sentencing purposes.