OPINION
{¶ 1} Defendant-appellant, Shaun T. Dennis ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas, which was entered upon a jury verdict finding appellant guilty of one count of possession of crack cocaine, in violation of R.C. 2925.11, a felony of the fifth degree.
 {¶ 2} Following are the facts pertinent to this appeal. On November 1, 2003, Franklin Township police officers Troy Hughes ("Officer Hughes") and David Ratliff ("Officer Ratliff"), responded to a call that a man was holding a group of people against their will at a residence on Hopkins Avenue in Franklin County, Ohio. Upon their arrival, Officer Hughes went to the rear of the house. Officer Ratliff entered the house from the front and observed appellant running to the back of the residence and exiting out a window. Because their dispatcher had indicated that a man at the residence possessed a firearm, the officers handcuffed appellant and conducted a pat-down search of him to determine whether he had a weapon. This search revealed no weapon on appellant's person. Thereafter, the officers placed appellant into a cruiser and went inside the residence to search for any weapons. This search, too, revealed no weapons.
 {¶ 3} The officers inquired about appellant's identity. Appellant was unable to provide any identification and offered several false names, birth dates and social security numbers. Officer Hughes took appellant to the Franklin County Jail in order to determine his identity. Before placing appellant in a cell, Officer Hughes conducted a thorough pat-down to determine whether appellant possessed any contraband that would be prohibited in the jail facility. Hughes found a yellowish-white rock in appellant's right front coat pocket. A field test revealed that the rock was crack cocaine.
 {¶ 4} When Officer Hughes found the rock, appellant became upset and angry, and began to call the officers names and use profanity. Specifically, appellant said, "That's not my fucking crack." Appellant also accused the officers of planting the crack on him.
 {¶ 5} Forensic expert James Smith, with the Ohio Bureau of Criminal Identification and Investigation, testified that the rock recovered from appellant was crack cocaine and that it was a "pretty pure form" of the drug.
 {¶ 6} Shortly before his trial began, appellant requested a continuance because, according to appellant, he had not had an adequate opportunity to review the information in the discovery packet prior to trial because the State of Ohio ("appellee"), had never given him the packet. The trial court overruled the motion. Shortly thereafter, appellant told the court that he was dissatisfied with his court-appointed attorney, and that he wanted to hire another attorney with his own funds. The court overruled this motion as well. At the close of appellee's case, appellant moved for a judgment of acquittal pursuant to Crim.R. 29, which the court overruled.
 {¶ 7} Following the jury's verdict of guilty, the court sentenced appellant to 11 months in prison, to be served consecutively with a sentence appellant received in another case.
 {¶ 8} On appeal, appellant advances four assignments of error for our review, as follows:
I. PREJUDICIAL ERROR OCCURS WHEN THE PROSECUTOR USES A STATEMENT MADE BY THE ACCUSED AS SUBSTANTIVE EVIDENCE OF GUILT, AFTER THE ACCUSED HAD BEEN PLACED IN CUSTODY CONTRA THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
II. THE TRIAL COURT ERRS IN DENYING A MOTION FOR CONTINUANCE WHEN THE ACCUSED STATES HE NEVER RECEIVED DISCOVERY, AND HE WANTS TO HIRE PRIVATE COUNSEL CONTRA THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION.
III. INEFFECTIVE ASSISTANCE OF COUNSEL OCCURS WHEN DEFENSE COUNSEL FAILS TO OBJECT TO A STATEMENT BY THE ACCUSED WHICH IS INADMISSIBLE UNDER THE FIFTH AND SIXTH AMENDMENTS TO THE CONSTITUTION.
IV. THE VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 9} In his first assignment of error, appellant argues that the trial court erred in admitting evidence of appellant having told the arresting officers that the rock found in his coat pocket was "not my fucking crack." He argues that the statement is inadmissible because it was made while appellant was in custody, without the benefit of warnings given pursuant toMiranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694, and in response to law enforcement actions that constitute the functional equivalent of interrogation.
 {¶ 10} We note initially that, because appellant did not move the trial court to suppress this statement, and failed to object to the admission of it at trial, he has waived all but plain error. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Glaros
(1960), 170 Ohio St. 471, 11 O.O.2d 215, 166 N.E.2d 379, paragraph one of the syllabus. Moreover, "constitutional rights may be lost as finally as any others by a failure to assert them at the proper time." State v. Childs (1968), 14 Ohio St.2d 56,62, 43 O.O.2d 119, 236 N.E.2d 545, citing State v. Davis (1964),1 Ohio St.2d 28, 30 O.O.2d 16, 203 N.E.2d 357.
 {¶ 11} Under Crim.R. 52(B), "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "An alleged error is plain error only if the error is `obvious,' State v. Barnes
(2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, and `but for the error, the outcome of the trial clearly would have been otherwise.' State v. Long (1978), 53 Ohio St.2d 91,372 N.E.2d 804, paragraph two of the syllabus." State v. Sapp,105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 97.
 {¶ 12} Even when an error satisfies the foregoing requirements, "Crim.R. 52(B) does not demand that an appellate court correct it. Crim.R. 52(B) states only that a reviewing court `may' notice plain forfeited errors; a court is not obliged to correct them." Barnes, supra, at 27. Thus, "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Henderson, 10th Dist. No. 04AP-1212, 2005-Ohio-4970, ¶ 31, citing Long, supra, at paragraph three of the syllabus.
 {¶ 13} In support of his argument under his first assignment of error, appellant directs our attention to the case of Combsv. Coyle (C.A.6, 2000), 205 F.3d 269, certiorari denied, (2000),531 U.S. 1035, 121 S.Ct. 644, 148 L.Ed.2d 549. But that case is wholly inapposite to the present one. In Combs, the United States Court of Appeals for the Sixth Circuit considered an appeal from the district court's denial of habeas corpus relief, after the petitioner had exhausted all avenues of direct appeal from his aggravated murder conviction and death sentence.
 {¶ 14} One of the bases for relief was Combs' claim that the trial court had erroneously allowed a police officer to testify that, in response to the officer's questioning, Combs told the officer to "talk to my lawyer." The court of appeals correctly stated, "Combs's statement is best understood as communicating a desire to remain silent outside the presence of an attorney." Id. at 279. Thus, "the admissibility of the statement [was] properly analyzed as a comment on pre-arrest silence." Ibid. The Combs
case did not involve the issue of admissibility of statements made during custodial interrogation; it involved a defendantrefusing to make a statement in response to police questioning. Thus, appellant's reliance on that case is wholly misplaced.
 {¶ 15} The decisional law from the Supreme Court of the United States and from Ohio's state courts does, however, provide ample guidance in our disposition of appellant's first assignment of error.
 {¶ 16} In Miranda v. Arizona (1966), 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694, the United States Supreme Court set forth the following guidelines concerning statements made by a person in custody:
* * * the prosecution may not use statements whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *
Id. at 444. (Footnote omitted.)
 {¶ 17} In the present case, it is undisputed that appellant was in custody. Therefore, the issue raised by his first assignment of error becomes whether appellant was "interrogated" by law enforcement officers in violation of his right underMiranda to remain silent until he had consulted with an attorney.
 {¶ 18} In Rhode Island v. Innis (1980), 446 U.S. 291,100 S.Ct. 1682, 64 L.Ed.2d 297, the United States Supreme Court explained:
* * * references throughout the [Miranda] opinion to "questioning" might suggest that the Miranda rules were to apply only to those police interrogation practices that involve express questioning of a defendant while in custody.
We do not, however, construe the Miranda opinion so narrowly. The concern of the Court in Miranda was that the "interrogation environment" created by the interplay of interrogation and custody would "subjugate the individual to the will of his examiner" and thereby undermine the privilege against compulsory self-incrimination. The police practices that evoked this concern included several that did not involve express questioning.
* * *
"Interrogation," as conceptualized in the Miranda opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself.
* * *
* * * the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should haveknown were reasonably likely to elicit an incriminating response.
Id. at 298-302. (Emphasis sic.) (Citations omitted.)
 {¶ 19} The Miranda court made it clear, however, that not all confessions are inadmissible:
* * * Any statement given freely and voluntarily without any compelling influence is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. * * * Volunteered statements of any kind arenot barred by the Fifth Amendment and their admissibility is not affected by our holding today.
Id. at 478. (Emphasis added.) Thus, "[s]tatements volunteered by a person in custody are admissible without prior Miranda
warnings. It is police interrogation without Miranda warnings and waiver which is not permitted." State v. Waddy (Nov. 2, 1989), 10th Dist. No. 87AP-1159, 1989 Ohio App. LEXIS 4137, at *41. Volunteered statements are "admissible regardless of the utterer's custodial status." State v. Phillips (1991),75 Ohio App. 3d 785, 788, 600 N.E.2d 825.
 {¶ 20} It is undisputed that police were not expressly questioning appellant when he told them that the crack found in his pocket did not belong to him. Thus, resolution of this assignment of error turns upon whether he made the statement in response to actions that are the functional equivalent of interrogation. If the actions of police amounted to interrogation, then the statement is inadmissible underMiranda; but if there was no interrogation, then appellant's statement was volunteered and was thus fully admissible at trial.
 {¶ 21} "In order to `determine whether a suspect has been "interrogated," the heart of the inquiry focuses on police coercion, and whether the suspect has been compelled to speak by that coercion.'" State v. Dawson (Dec. 11, 2001), 10th
Dist. No. 00AP-1052, 2001 Ohio App. LEXIS 5478, at *21, quotingState v. Tucker (1998), 81 Ohio St.3d 431, 436, 692 N.E.2d 171.
 {¶ 22} In the instant case, we perceive no evidence of coercion on the part of Officer Hughes and Officer Ratliff. When they pulled the rock of crack cocaine out of appellant's coat pocket, they were engaged in "actions normally attendant to arrest and custody," which actions are excluded from the definition of "interrogation" for purposes of a Miranda
analysis. See Innis, supra, at 301.
 {¶ 23} The officers cannot be said to have designed their actions in an attempt to elicit an incriminating response from appellant, nor do we find that their actions were of such a character that the officers should have known that they were reasonably likely to elicit an incriminating response. Accordingly, we conclude that appellant's statement was voluntarily made. See Tucker, supra, at 438. Because his statement was voluntary, it was not inadmissible simply because it was made in the absence of Miranda warnings. As such, the trial court did not err in allowing the jury to hear testimony regarding the statement. For this reason, appellant's first assignment of error is overruled.
 {¶ 24} In his second assignment of error, appellant argues that the trial court erred in denying his request for a continuance based on his statement that he never received a discovery packet and that he was dissatisfied with his court-appointed counsel and wished to hire private counsel.
 {¶ 25} The grant or denial of a continuance is a matter entrusted to the broad discretion of the trial court, and will not be reversed absent an abuse of discretion. State v. Unger
(1981), 67 Ohio St.2d 65, 67, 21 O.O.3d 41, 423 N.E.2d 1078;State v. Ahmed, 103 Ohio St.3d 27, 2004-Ohio-4190, ¶ 44-45. "There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Unger, supra, at 67, quotingUngar v. Sarafite (1964), 376 U.S. 575, 589, 84 S.Ct. 841,11 L.Ed.2d 921.
 {¶ 26} The Unger court went on to delineate considerations that a court should bear in mind when evaluating a request for continuance. The court explained:
Weighed against any potential prejudice to a defendant are concerns such as a court's right to control its own docket and the public's interest in the prompt and efficient dispatch of justice.
In evaluating a motion for a continuance, a court should note,inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.
Id. at 67-68.
 {¶ 27} In the present case, appellant asked for a continuance during the disposition of preliminary matters just as his October 5, 2004 trial was about to begin. He told the trial judge that he "was not given a discovery package[.]" (Tr., 12.) After the judge pointed out that the record indicated that requested discovery was provided to defense counsel on June 2, 2004, appellant reiterated his request for a continuance. He told the judge, "I'm not aware of what is going on, and my counsel has not provided me with anything to let me know what I'm facing and what — what I'm facing. I would respectfully ask the Court to give me that continuance, to overlook this * * *." (Tr., 14.)
 {¶ 28} Perhaps believing that appellant was confusing his cocaine possession case with two other, unrelated cases in which the same attorney had been appointed to represent him, the trial court pointed out, "you'll have plenty of time to talk to your counsel about the other two cases[.]" (Tr., 15-16.) Appellant responded by telling the judge that his counsel had "not provid[ed] the defendant with this information and not allowing — letting me know previous to today that I would be in trial." (Tr., 16-17.) At this point, appellant's counsel told the judge, "Your Honor, I have made Mr. Dennis fully aware of what is in the discovery. Mr. Dennis knows that all of the cases were scheduled today. We are fully prepared to go to trial today on [Case No.]-2499." (Tr., 17.)
 {¶ 29} Appellant then stated, "That's not true," whereupon his counsel said, "I can't give Mr. Dennis any more briefing than I've already given him. And he's not going to testify, so there's no preparation for me to do with Mr. Dennis taking the stand unless Mr. Dennis overrules my advice." (Tr., 17.)
 {¶ 30} At this point, the following colloquy took place between appellant and the trial judge:
APPELLANT: Well, your Honor, being that I am financially able, I don't — I am financially able to afford counsel, and being that Mr. Settina —
THE COURT: What's with all these free lawyers being appointed for you, then? How did that get by the Court?
APPELLANT: I mean, I don't know. I mean, I have family, I have family members, I have family members.
THE COURT: I thought you did hire Settina —
APPELLANT: Yes, that was —
THE COURT: — once, and he went to trial and you won. You got to love this guy.
APPELLANT: But the thing is, I'm being — this going to trial now presents me with ambush, that I don't know what the prosecutor is going to present. I don't know any of his intents, any of his notice of intent, none of — that has not been addressed to me, your Honor.
THE COURT: Well, it's been addressed to your attorney. He asked for discovery, he received discovery. He asked for a bill of particulars, he received a bill of particulars. He's discussed this case with you, I'm sure, as he pointed out. I don't know what else one can do to get you prepared to go to trial. So, if your motion is overruled, the trial based on that, it's overruled.
* * *
APPELLANT: I have to go to trial with —
THE COURT: You have to go to trial on Case No. 2499.
APPELLANT: With Mr. Settina?
THE COURT: Yes.
APPELLANT: And that's not my wishes at this time.
THE COURT: Why isn't it your wish?
APPELLANT: It's not my wishes at this time due to the fact that I am — I do not know anything about this case, period. I don't even — didn't even know that I was even charged with a possession of drugs, like I said, until that indictment, because I never had any drugs and I don't know that prosecutor's intent —
THE COURT: You got news six months ago when you were indicted, for God's sake. You should have known this six months ago.
* * *
THE COURT: Your attorney said to me that he's done everything he can to prepare you for this trial and assisted you in any way he could. The fact that his advice is going to be to you that you are not to testify in this case, unless you overrule that advice, then he might want to talk to you about some things, but right now the strategy is for you not to testify in this case. And this is a simple possession of cocaine. It's a pretty easy case to try. Nothing complicated about it. So your motion is overruled.
(Tr., 17-20.)
 {¶ 31} A few moments later, just as the judge was preparing to bring in the potential jurors, appellant again addressed the court, saying:
Your Honor, I have a conflict of interests with my attorney at this point in time about — about the plea and bar situation. It is not my wishes to accept any type of plea, plea and bar, and my attorney is constantly in my ear telling me to take this plea, which constitute that it maybe is a conflict of interests, and he may not be able to represent me to the best of his ability, sir.
(Tr., 23.)
 {¶ 32} The court replied:
Prosecution made the offer, your attorney is obligated to convey that to you, along with his advice. * * * My understanding is you are not accepting his advice, and so we're going to trial. I mean, what is the big deal?
 {¶ 33} Appellant then answered:
Well, like I said, it really constitutes that he's not — he's not fully prepared and equipped to handle this case and he's gonna lose this case, so I respectfully ask the Court to allow me a continuance and give me time to have new representation of my own, pay for my own representation.
 {¶ 34} The court then inquired of trial counsel whether appellant and counsel had irreconcilable differences. Counsel replied, "Your Honor, I'm fully prepared. I'm under an obligation to zealously represent Mr. Dennis and I will do so, despite recommending that he take a plea." (Tr., 24.) The court again asked counsel whether he had irreconcilable differences with appellant, and counsel replied, "I do not." The court then asked counsel whether he could represent appellant to the best of his ability, and counsel replied, "Absolutely, your Honor." The court again overruled appellant's motion for a continuance, and trial began.
 {¶ 35} The court gave appellant ample opportunity to explain the legitimacy of his request for a continuance. Yet, it is clear appellant was merely seeking to delay the commencement of trial. Appellant had been aware of the charge he faced for at least six months, the state timely provided the defense with discovery, appellant's attorney had discussed the case with him and shared the contents of the discovery packet with him, and appellant's appointed counsel was fully prepared to go to trial. When these facts were pointed out to appellant, he changed his stated reason for his dissatisfaction with counsel, and told the court that counsel's advice that he accept a plea offer caused him to believe that counsel could not represent him adequately at trial. The court informed appellant that counsel had discharged his duty to convey all plea offers and offer advice, and that counsel was complying with appellant's request to go to trial. The court then inquired of counsel whether he and appellant had irreconcilable differences, and counsel answered in the negative, stating that he could "absolutely" represent appellant to the best of his ability.
 {¶ 36} In requesting time to hire private counsel, appellant told the court that he possessed the funds to hire his own attorney, even though he had earlier signed an affidavit of indigency. When pressed about the availability of funds, he said, "I don't know, I mean, I have family members." This is not an assertion that appellant had the present ability to hire his own attorney. In any case, if appellant had had the funds to hire his own attorney, he had been given ample time prior to trial in order to do so.
 {¶ 37} On the record before us, we find no abuse of discretion in the trial court's denial of appellant's motion for continuance. Accordingly, appellant's second assignment of error is overruled.
 {¶ 38} In his third assignment of error, appellant argues that his trial counsel was ineffective in failing to object to the use of his statement that the crack found in his pocket did not belong to him. Because we have already determined that the statement was admissible and the trial court did not err in admitting it, there can be no ineffective assistance in counsel's having failed to object to it. State v. Getsy (1998),84 Ohio St.3d 180, 195, 702 N.E.2d 866. Accordingly, appellant's third assignment of error is overruled.
 {¶ 39} In his fourth and final assignment of error, appellant argues that his conviction stands against the manifest weight of the evidence. In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a "thirteenth juror." Under this standard of review, the appellate court weighs the evidence in order to determine whether the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541.
 {¶ 40} The appellate court, however, must bear in mind the trier of fact's superior, first-hand perspective in judging the demeanor and credibility of witnesses. See State v. DeHass
(1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. The power to reverse on "manifest weight" grounds should only be used in exceptional circumstances, when "the evidence weighs heavily against the conviction."Thompkins, supra, at 387.
 {¶ 41} Appellant's argument in support of this assignment of error consists solely in the notion that, without appellant's own incriminating statement that the crack found in his pocket did not belong to him, the jury would not have convicted him because, with the remaining evidence, the prosecution would not be able to meet its burden of proving the requisite mens rea to support a conviction. As we discussed earlier, the statement was admissible and properly admitted. Upon our review of all of the evidence, we conclude that appellant's conviction was not against the manifest weight of the evidence, and the jury did not lose its way in returning a verdict of guilty. For that reason, appellant's fourth assignment of error is overruled.
 {¶ 42} Having overruled all four of appellant's assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
McGrath and Travis, JJ., concur.